ESTATE OF MILTON S. WYCOFF, DECEASED, ZIONS FIRST NATIONAL BANK, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5532–70. Filed February 1, 1973.

*J. Jay Bullock* and *Harry D. Pugsley*, for the petitioner.

*W. Durrell Nielsen*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency in the Federal estate tax of petitioner in the amount of $57,458.30.

The sole issue for our consideration is whether in determining the value of the marital deduction to which petitioner is entitled there must be a reduction for inheritance, estate, and transfer tax liabilities because of the executor's power to use marital trust assets for their payment.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts, together with exhibits attached thereto, is incorporated herein by this reference.

Milton S. Wycoff (hereinafter sometimes referred to as the decedent) died on March 3, 1966, at Salt Lake City, Utah. Zions First National Bank is the duly acting and qualified executor of the Estate of Milton S. Wycoff, deceased, and at the time of filing of the petition herein had its principal place of business in Salt Lake City, Utah. Zions First National Bank filed the requisite Federal estate tax return for the Estate of Milton S. Wycoff with the district director of internal revenue, Salt Lake City, Utah.

The decedent was survived by his wife, LaPearl Weeter Wycoff, and one son, Bruce Wycoff. Both the wife and son were living at the date of the petition filed herein.

On March 30, 1966, the will of the decedent was admitted to probate in the District Court, Probate Division, Salt Lake County, State of Utah. Letters testamentary were granted on March 30, 1966, naming Zions First National Bank, Salt Lake City, as executor of the Estate of Milton S. Wycoff.

As of March 3, 1966, the decedent owned 91,830 of 150,000 shares, or approximately 61 percent, of Wycoff Co., Inc., an operating motor carrier.

Wycoff Co. owned all but 4 shares of Mountain Services, Inc., which corporation owned and leased trucks to Wycoff Co. The decedent owned the remaining 4 shares.

As of March 3, 1966, the decedent owned 11,010 of 20,000 shares, or approximately 55 percent, of Wycoff Corp., which corporation owns the real property used by Wycoff Co.

As of March 3, 1966, the decedent owned 9,810 of 17,162 shares, or approximately 57 percent, of Wycoff Warehouse, Inc., a public warehouse corporation.

The decedent's will created a marital trust for the surviving wife, giving her the income for life with a testamentary power to appoint the corpus and all accrued and undistributed income.

The decedent's will, in pertinent part, provided:

### ARTICLE VI

If my said wife survives me, I devise, bequeath and appoint to my Trustee, in trust, an amount equal to fifty percent (50%) of the value of my adjusted gross estate as finally determined for Federal estate tax purposes * * *. [I]n selecting and assigning to this Marital Trust the property and assets of which the same shall consist, my Trustee, insofar as is possible and practicable, shall resort first to cash, secondly to debentures or other securities, and thirdly to nonvoting shares of stock in any corporations in which I shall have such shares at the time of my death, and lastly to voting shares of stock in any corporations in which I may have such shares at the time of my death, it being my intention and desire that unless absolutely required to provide a portion of the share of my property required for this Marital Trust, that all of my shares of voting stock in any corporation in which I may hold such shares at the time of my death shall be apportioned to and become a part of my Residuary Trust Estate as created and referred to in this Will. This Trust created for the use and benefit of my wife shall be known as the "Marital Trust" and shall be held and administered and disposed of as follows:

First: I direct that income from the Marital Trust * * * shall be paid to my wife in convenient installments but not less frequently than quarter-annually during her lifetime.

\* · \* \* \* \* \* \*

Third: Upon the death of my said wife, all accrued and undistributed income of the Marital Trust shall be paid and distributed by said Trustee unto the person or persons who my said wife by her Last Will and Testament may designate, nominate, and appoint to receive the same * * *. [A]nd further upon the death of my said wife the entire remaining corpus of the Marital Trust shall

be paid and distributed by said Trustee to the person or persons who my said wife, by her Last Will and Testament, shall designate, nominate and appoint to receive the same * * *

* * * * * * *

ARTICLE VII

If my son, Bruce Wycoff, survives me, I devise, bequeath and appoint all of the rest, residue and remainder of my property * * * to my Trustee, in trust, for the use and benefit of my said son, Bruce, as beneficiary as herein provided, said Trust to be known as the "Residuary Trust" * * *

* * * * * * *

ARTICLE XII

I direct prompt payment of the expenses incident to my funeral, burial and last illness, and all my just debts. *I further direct that all inheritance, estate and transfer taxes due by reason of my death shall be paid out of that portion of my estate which is not included in the Marital Trust to be administered by my Trustee, unless, in the best business judgment and sole discretion of my executor, such taxes could be more prudently paid from any assets in my estate without respect to what is or is not included in the Marital Trust created by this my Last Will.* [Emphasis added.]

The decedent in his will indicated a preference as to which assets were to go to the marital trust so that his surviving spouse would not have to be involved in decisions relating to the family business.

Since the date of death, the executor has not directed that any inheritance, estate, and transfer taxes be paid from assets which would otherwise be included in the marital trust. However, petitioner has elected to pay the estate tax liability as reflected on the estate tax return in 10 equal yearly installments and all of those installment payments have not yet been completed.

Most of the assets owned by the decedent at his death were nonliquid. On November 6, 1968, the board of directors of Wycoff Co. voted to issue a stock dividend in the form of 0.012 shares of 7-percent preferred stock for each share of common stock outstanding, both class A and class B. Shortly thereafter 1,800 shares were issued, and on December 2, 1968, the preferred stock was called. The 1,800 shares were redeemed at $100 per share. The purpose of the stock dividend and redemption was to provide the estate with cash to pay the cost of administration and part of the estate's tax liability.

On December 31, 1968, the District Court, Probate Division, entered its decree of distribution, thereby distributing the residue of the decedent's estate to Zions First National Bank as trustee for two trusts created by the decedent's will, one for the surviving spouse and one for the surviving son.

On September 9, 1970, petitioner filed a petition for order approving distribution of property with the District Court, Probate Division, Salt Lake County, State of Utah. The District Court issued its order approving distribution of property on September 30, 1970.

The property passing to the wife of the decedent other than by the terms of the will relating to the marital trust, and taken into account and valued for Federal estate tax purposes, is as follows:

(a) Property:

| | Amount |
|---|---|
| Personal residence | $35, 000. 00 |
| Automobile | 2, 620. 00 |
| Insurance proceeds—Mutual Life Insurance Co. of New York | 22, 133. 47 |
| Cash—joint tenancy property | 392. 26 |
| | 60, 145. 73 |

(b) Property—other insurance:

| | |
|---|---|
| Northwestern Mutual Life Insurance Policy | 4, 985. 25 |

The property distributed to the marital trust under the terms of the will, with the values as finally determined for Federal estate tax purposes, is as follows:

| Property | Amount |
|---|---|
| Cash | $3. 84 |
| 37,214 shares, Wycoff Co., class B | 148, 669. 93 |
| 2,582 shares, Wycoff Corp., nonvoting | 30, 493. 42 |
| 24,014 shares, Wycoff Co., class B | 95, 935. 93 |
| 2,923 shares, Wycoff Corp., nonvoting | 34, 520. 63 |
| | 309, 623. 75 |

ULTIMATE FINDING OF FACT

At the time of the decedent's death, the executor had the power to utilize any assets in the estate for the payment of inheritance, estate, and transfer taxes without respect to what assets were to be included in the marital trust.

OPINION

The sole issue for our consideration is whether in determining the value of the marital deduction to which the petitioner is entitled there must be a reduction for inheritance, estate, and transfer tax liabilities because of the executor's power to use marital trust assets for their payment.

Second 2056(a)[1] allows a "marital deduction" from a decedent's gross taxable estate for the value of interests in property passing from the decedent to his surviving spouse.

---

[1] All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.

SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

Congress in creating the marital deduction intended to equalize the effect of the estate taxes in community property and common law jurisdictions. See *United States* v. *Stapf*, 375 U.S. 118 (1963) ; H.Rept. No. 1274, 80th Cong., 2d Sess., pp. 24–26; S.Rept. No. 1013, 80th Cong., 2d Sess., pp. 26–29.

To equalize the incidence of progressively scaled estate taxes and to adhere to the patterns of state law, the marital deduction permits a deceased spouse, subject to certain requirements, to transfer free of taxes one-half of the non-community property to the surviving spouse. * * * The purpose * * * is * * * to permit a married couple's property to be taxed in two stages and not to allow a tax-exempt transfer of wealth into succeeding generations. *Thus the marital deduction is generally restricted to the transfer of property interests that will be includible in the surviving spouse's gross estate* * * * [Emphasis added. *United States* v. *Stapf, supra* at 128.]

To effectuate this purpose Congress provided that for purposes of section 2056(a) the valuation of the interest passing to the surviving spouse must be governed by section 2056(b)(4).[2]

In cases where the value of the interest passing will be affected by the payment of estate, succession, or inheritance taxes, section 2056(b)(4)(A) provides the rule for making a valuation determination.

In computing the marital deduction allowed by section 2056(a), section 2056(b)(4)(A) provides that the effect of any estate, succession, or inheritance taxes, including the Federal estate tax, shall be taken into account in valuing any interest in property passing to the surviving spouse and qualifying for the marital deduction. [*Estate of Frank Pangas*, 52 T.C. 99, 101 (1969).]

As we see it the problem in the case at bar is essentially one of valuation—that is, what was the value of the property passing to the wife at the time of death? This Court and a number of others, after considering the statutory provision, have concluded that the deduction is based upon the net value of the bequest to the wife which in turn is affected by the *liability* of the bequest for the payment of debts, taxes, etc. See *Estate of Newton B. T. Roney*, 33 T.C. 801 (1960), affirmed per curiam 294 F.2d 774 (C.A. 5, 1961) ; *Thompson* v. *Wise-*

---

[2] SEC. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

(b) LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

 * * * * * * *

(4) VALUATION OF INTEREST PASSING TO SURVIVING SPOUSE.—In determining for purposes of subsection (a) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this section—

(A) there shall be taken into account the effect which the tax imposed by section 2001, or any estate, succession, legacy, or inheritance tax, has on the net value to the surviving spouse of such interest ; and

(B) where such interest or property is encumbered in any manner, or where the surviving spouse incurs any obligation imposed by the decedent with respect to the passing of such interest, such encumbrance or obligation shall be taken into account in the same manner as if the amount of a gift to such spouse of such interest were being determined.

*man*, 233 F.2d 734 (C.A. 10, 1956) ; and *United States* v. *Stapf*, *supra*, which dealt with valuation section 2056(b) (4) (B).

In the case at bar, at the time of decedent's death article XII of the decedent's will directed the executor in his sole discretion to pay death taxes without respect to what was or was not included in the marital trust. Therefore, at the time of decedent's death the interest passing to the wife was potentially liable for all of the death taxes that might have been asserted. In order to comport with the purpose of the marital deduction it is proper to reduce the value of the interest passing for purposes of section 2056(a) by the amount of this liability. Were we to do otherwise the estate would receive a marital deduction for amounts which could be used for the payment of taxes. These amounts may never find their way into the surviving spouse's gross estate and the purpose of the marital deduction would be thwarted.

Whether any estate taxes are payable from the surviving spouse's interest is a matter governed by State law. *Riggs* v. *Del Drago*, 317 U.S. 95 (1942); *Estate of Frank Pangas*, 52 T.C. 99; *Estate of Albert L. Rice*, 41 T.C. 344 (1963), modified sub nom. *Boston Safe Deposit and Trust Co.* v. *Commissioner*, 345 F.2d 625 (C.A. 1, 1965).

The decedent clearly intended that his executor possess absolute power to commit the assets of the marital trust to the payment of death taxes if he saw fit to do so. It is equally clear that under Utah State law the decedent's will must be interpreted to give effect to the decedent's expressed intention. See Utah Code Ann., secs. 74–2–1 and 74–2–9, and *In Re Johnson's Estate*, 228 Pac. 748 (Utah 1924). We can find nothing in Utah State law which would negate the power granted to the executor in the decedent's will.

Petitioner's reliance on *Estate of Amory Lawrence Haskell*, 58 T.C. 197 (1972), on appeal (C.A. 3, Nov. 21, 1972), is misplaced. In that case the Court held that a New Jersey State transfer inheritance tax should not be apportioned for purposes of section 2056(b) (4) (A) so as to reduce the amount of the interest passing to the wife and qualifying for the marital deduction. The Court specifically found that the testator intended that his wife receive an amount equal to the maximum marital deduction and that "Nothing contained in the will of the decedent indicates an intention contrary to his intent to afford his estate the maximum marital deduction." *Estate of Amory Lawrence Haskell*, *supra* at 200. In the case at bar article XII of the decedent's will very clearly indicates an intention contrary to affording the estate the maximum marital deduction if the executor in his sole discretion deemed it necessary.

Petitioner further contests the respondent's method of applying section 2056(b) (4) (A) so as to value the interest at the date of the decedent's death. It contends that it is improper to reduce the value of

the section 2056(a) deduction by liabilities that may never have to be met out of the marital trust property. Relying on *Weyenberg* v. *United States*, 135 F. Supp. 299 (E.D. Wis. 1955), it argues that the interest passing to the wife should reflect the effect of only those taxes which are actually charged, paid from, or chargeable to the interest passing to the spouse. In effect it argues that events occurring after the decedent's death should affect the valuation of the interest passing to the wife. The *Weyenberg* case found that where a Wisconsin County Probate Court determined a widow's share to be an amount unreduced by Federal estate taxes and the executors actually distributed such portion of the estate to the widow, the county court decree had become final and was conclusive upon the Federal taxing authorities.

In the case of *United States* v. *Mappes*, 318 F. 2d 508, 510–511 (C.A. 10, 1963), the court was faced with a probate court's final determination that an interest passing to a spouse was not a terminable interest for purposes of the marital deduction. The court in determining the proper Federal tax consequences refused to rely on the probate court decree.

For the purpose of determining whether the interest which passed to the spouse was a terminable interest, within the meaning of the federal statute, we must first determine the nature and extent of the interest which passed at the instant of the testator's death, not the interest given by the decree of the Probate Court. * * *

The *Mappes* case makes it clear that for purposes of the marital deduction whether an interest passing to the surviving spouse qualifies is a question which must be determined at the time of the decedent's death. It is not a determination affected by later events which may or may not happen. The case of *Estate of Albert L. Rice, supra*, stands for the application of this proposition to the valuation area. In that case a marital deduction was limited to the interest passing to the surviving spouse reduced by its apportioned share of Federal estate and State inheritance taxes. This was so in spite of the fact that the trustee exercised his discretionary power and paid all of the taxes from the assets of the nonmarital trust.

The *Rice* case is sound authority for the proposition that for purposes of the marital deduction, valuation of the interest which passes to the surviving spouse is determined at the moment of the decedent's death. We adopt its reasoning in the case at bar.

Brief as is the instant of death, the court must pinpoint its valuation at this instant—the moment of truth, when the ownership of the decedent ends and the ownership of the successors begins. * * * [*United States* v. *Land*, 303 F. 2d 170, 172 (C.A. 5, 1962).]

While the effect of section 2056(b) (4) (A) is sufficient to dispose of the issue herein, see *Lewald* v. *United States*, 245 F. Supp. 336 (S.D.

N.Y. 1965), we feel it is appropriate to also address ourselves to respondent's more heavily relied on alternative argument. In his alternative argument respondent assumed that the value of the marital trust for purposes of the section 2056(a) deduction was not affected by section 2056(b)(4)(A). Respondent therefore applied section 2056(b)(1) to the interest in trust which passed to the wife and achieved the same result as that dictated by the effect of section 2056(b)(4)(A).

With several exceptions no marital deduction is allowed for interests which are defined as "terminable" under section 2056(b)(1). One of these exceptions, as found in section 2056(b)(5),[3] is the transfer of a life estate with power of appointment in the surviving spouse.

In order to qualify for this exception to the general rule the power transferred to the surviving spouse must be a power to appoint "the entire interest, or such specific portion thereof" and "exercisable by such spouse alone and in all events."

It is respondent's alternative contention that since the decedent empowered his executor in his "best business judgment and sole discretion" to use "any assets in my estate without respect to what is or is not included in the Marital Trust" for the payment of taxes, the marital trust interest which passed to the surviving spouse did not invest in the spouse the requisite power as to that portion of the marital trust which could have been used to meet the liability for taxes. Respondent argues that deductions are a matter of legislative grace, *New Colonial Co.* v. *Helvering*, 292 U.S. 435 (1934), and where the taxpayer seeking the benefit of the deduction does not meet every condition imposed by Congress the claim to the deduction must fail.

In numerous instances wherein the surviving spouse's power was limited because of the presence of a trustee's power to invade, the courts have held that all of the requirements of section 2056(b)(5) had not been met and the deduction under that section was inappropriate. See, for example, *Estate of Morton H. Spero*, 34 T.C. 1116

---

[3] SEC. 2056(b). LIMITATION IN THE CASE OF LIFE ESTATE OR OTHER TERMINABLE INTEREST.—

(5) LIFE ESTATE WITH POWER OF APPOINTMENT IN SURVIVING SPOUSE.—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

(1960) ; *Willson* v. *United States*, 343 F.2d 929 (Ct. Cl. 1965) ; *Estate of Frank E. Tingley*, 22 T.C. 402 (1954), affirmed sub nom. *Starrett* v. *Commissioner*, 223 F.2d 163 (C.A. 1, 1955) ; *Estate of Raymond Parks Wheeler*, 26 T.C. 466 (1956) ; and *Estate of Allen L. Weisberger*, 29 T.C. 217 (1957).

We agree with respondent's contention that the power of the decedent's wife in the present case was not exercisable by her "alone and in all events" and that the exception to the terminable interest rule found in section 2056(b) (5) is inapplicable to the extent that the marital deduction trust could have been appropriated to the payment of taxes.[4]

*Decision will be entered under Rule 50.*

---

[4] Petitioner argues that in order for the wife's power to not qualify under sec. 2056(b) (5) the trustee must be able to appoint part of the interest "to any person other than the surviving spouse" and that the United States of America or the Utah State Tax Commission is not a "person" as defined by sec. 7701(a) (1). Therefore, the trustee's power to invade the marital trust for purposes of paying taxes was not such a power which would limit and disqualify the wife's power within the terms of sec. 2056(b) (5). This argument is of no substance. Sec. 7701(a) (1) defines the term "person" for purposes of the Code "to mean and *include* an individual, a trust, estate, partnership, association, company, or corporation." (Emphasis added.) That Code section does not exclude any particular thing from qualifying as a person for purposes of the Code; it merely describes some of the things which the definition may include.

The Supreme Court in *Ohio* v. *Helvering*, 292 U.S. 360, 370 (1934), in referring to the definition of "person" as found in the Code stated, "Whether the word 'person' * * * includes a state or the United States depends upon the connection in which the word is found."

In order to best carry out the express purpose of the marital deduction, the word "person" as found in sec. 2056(b) (5) must include the United States or a State in the context of the case at bar.